IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CUMIS INSURANCE SOCIETY, INC.

        *Plaintiff*,

vs.

MARK KEILIG,

        *Defendant.*

Case No. 11-1115-EFM-DJW

**MEMORANDUM AND ORDER**

This case arises out of an insurance subrogation claim by CUMIS Insurance Society ( Plaintiff), against Defendant Mark Keilig (Defendant). As manager of United Northwest Federal Credit Union (Credit Union), Defendant exceeded his authority and approved a number of unauthorized loans without the approval or knowledge of the Credit Union's board of directors ("the Board"). When the unauthorized loans went into default, the Credit Union made a claim on its policy with Plaintiff. Plaintiff subsequently brought this insurance subrogation suit against Defendant.

The following motion is now before the Court: Defendant's Rule 12(b)(6) motion to dismiss**.** The three issues raised in the motion are: (1) when the unauthorized loans were "discovered" for purposes of calculating the proper statute of limitations; (2) whether the "anti-subrogration rule" precludes Plaintiff's claim; (3) whether Plantiff's claim against Defendant was preserved or released

in a settlement agreement in a related case.[1] For the following reasons, the Court denies the motion to dismiss.

## I. BACKGROUND

Defendant was the sole manager for United Northwest Federal Credit Union from October, 1994 through March, 2009. While acting in his capacity as manager for the Credit Union, Defendant approved a total of six loans issued to Ron and Abigail Delimont ("the Delimonts"), including a $600,000 "consolidation" loan ("the Delimont Loan") issued in December, 2008. These loans violated various lending policies instituted by the Credit Union. The Delimont Loan violated a policy which required the approval of the board of directors for certain loans.

On February 26, 2009, Defendant disclosed the $600,000 loan issued to the Delimonts to the Board. Prior to the February, 2009 disclosure of the loan by Defendant, the Board was unaware of the existence of the Delimont Loan. Defendant left his position as manager of the Credit Union on March 26, 2009. The Delimonts made all monthly payments on the $600,000 loan for several months until the summer of 2009, when the loan went into default.

After the Delimonts defaulted on the $600,000 loan, the Credit Union investigated all of the loans Defendant had made to the Delimonts. In August, 2009, the Credit Union filed a "Notice of Loss Bond." The Notice lists August 4, 2009 as the date of discovery of the loss. In November, 2009, the Credit Union filed a "Fidelity Proof of Loss" with Plaintiff. On March 22, 2011, Plaintiff filed this civil action in the District Court for Norton County, Kansas. This action was removed to Federal Court in April, 2011. Plaintiff alleges that Defendant defrauded the Credit Union by violating the Credit

---

[1] *United Northwest Federal Credit Union vs. Clark Cox and Peggy Cox vs. Mark Keilig,* No. 2009-CV-44, 2009 Dist. Ct. Norton Cnty. Kan.

Union's lending policies in exceeding his authority by approving the unauthorized loans to the Delimonts, and internally kiting checks among five Delimont share draft accounts. In its Complaint, Plaintiff alleged four claims for relief: (1) Fraud; (2) Breach of Duty of Care; (3) Intentional Misrepresentation; and (4) Defalcation While Acting as a Fiduciary.

In a 2009 case ("the Cox Case"), the Credit Union brought suit against Clark and Peggy Cox ("the Coxes") after they defaulted on a loan ("the Cox Loan") issued to them by Defendant.[2] The Coxes were business partners of the Delimonts. The Coxes filed a Third-Party Claim against Defendant alleging that he made false representations to them regarding their obligation to repay the Cox Loan. The Credit Union, the Coxes and Defendant entered into a settlement agreement ("the Cox Agreement") in August 2010, regarding the claims in the Cox Case.

Paragraph (6) of the Cox Agreement states:

"For and in consideration of the agreements and other releases set forth in this Agreement, Credit Union and each and all of its agents, attorneys, representatives, successors and assigns do hereby release and discharge Mark Keilig, (subject to a bond claim noted below) his attorneys, and his spouse, successors, heirs, from any and all claims arising out of this Suit and Loan, and will not pursue him personally regarding any claims arising out of any alleged actions by him except as specifically provided herein. The Credit Union is specifically reserving the right to pursue a claim against his bond (called bond claim) for the difference between the settlement amount and the full amount due upon the Loan, and nothing in this release shall be construed as a settlement of a bond claim nor shall be used as a defense or bar to any claims the Credit Union may have against Mark Keilig's bond for faithful performance."

The "Suit" referred to in paragraph six of the Cox Agreement is the suit brought by the Credit Union against the Coxes.[3] The "Loan" referred to in paragraph six of the Cox Agreement is a loan issued to

---

[2]*Id.*

[3]*Id.*

the Coxes and is separate from the loans made to the Delimonts which are the basis for Plaintiff's complaint.

## II. Legal Standards

**A. Rule 12(b)(6) Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[4] "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."[5] "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[6]

In determining whether a claim is facially plausible, the court must draw on its judicial experience and common sense.[7] All well pleaded facts in the complaint are assumed to be true and are viewed in the light most favorable to the plaintiff.[8] Allegations that merely state legal conclusions, however, need not be accepted as true.[9]

---

[4]*Ashcroft v. Iqbal*, - - - U.S. - - -, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[5]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[6]*Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003).

[7]*Iqbal*, 129 S. Ct. at 1950.

[8]*See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).

[9]*See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## III. ANALYSIS

Defendant seeks dismissal of Plaintiff's claim pursuant to Rule 12(b)(6). Defendant argues that Plaintiff's claim should be dismissed for three reasons: (1) the two-year statute of limitations for fraudulent activities under Kansas law had run prior to the date Plaintiff filed its complaint; (2) the "anti-subrogation rule" precludes Plaintiff's claim; and (3) the settlement agreement in the "Cox Case" released Plaintiff's claim against Defendant. The Court will address these arguments in that order.

**A. Application of Kansas Two-Year Statute of Limitations for Fraudulent Activities**

On December 31, 2008, Defendant authorized a loan to the Delimonts in the amount of $600,000 in violation of Credit Union policies. On February 26, 2009, Defendant disclosed the $600,000 Delimont loan to the Board. The Delimonts defaulted on the loan in the summer of 2009 after which, the Board investigated Defendant's activities, and on August 18, 2009 filed a "Notice of Loss Bond" with Plaintiff, listing August 4, 2009 as the date of discovery of the loss. Defendant argues that the statute of limitations accrued on the date the Board was notified, February 26, 2009, while Plaintiff argues that the statute accrued on August 4, 2009. This suit was filed on March 22, 2011.

Kansas law limits actions on the basis of fraud to two years, but "the cause of action is not deemed to have accrued until the fraud is discovered."[10] In addition, the cause of action is not deemed to have accrued until "the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party . . ."[11]

---

[10] K.S.A. 60-513(a)(3).

[11] K.S.A. 60-513(b).

"A plaintiff is deem[ed] to have discovered the fraud when he knew or, with reasonable diligence should have known of the acts or conduct giving rise to the injury."[12] Furthermore, "[a]n injury is reasonably ascertainable when the plaintiff knew or could reasonably have been expected to know of the alleged negligence."[13] "The term 'reasonably ascertainable' carries with it an obligation to investigate available factual sources."[14] The key to the accrual of a fraud claim is knowledge of the injury.[15]

"[A] limitation argument is seldom appropriate at the pre-discovery stage where the accrual of the cause of action hinges upon a party's actual or constructive knowledge of a fraudulent act. 'As the majority of circuits have acknowledged, the issue of when a plaintiff knew or with reasonable diligence should have known of a cause of action is a question for the jury.'"[16]

The Court concludes that Defendant's motion to dismiss on the ground that the two-year Kansas Statute of Limitations for fraudulent activities has run should be denied. There is a genuine issue of fact as to when Defendant's acts were "discovered" or when the fact of injury became "reasonably ascertainable" to the Credit Union. Defendant argues the date of discovery is February 26, 2009, the date Defendant notified the Board of the Delimont loan. Plaintiff argues that the fact of injury became reasonably ascertainable on August 4, 2009, the date the Delimonts defaulted on the loan.

---

[12]*Schrag v. Dinges*, 788 F. Supp. 1543, 1549 (D. Kan. 1992) (citing *Augusta Bank & Trust v. Broomfield*, 643 P.2d 100, 108 (Kan. 1982)).

[13]*Bagby v. Merrill Lynch*, 104 F. Supp.2d 1294, 1298 (D. Kan. 2000) (quoting *Knight v. Myers*, 748 P.2d 896, 901 (Kan. App. 1988)).

[14]*Id*. at 1298.

[15]*Id.*

[16]*Schrag v. Dinges* 788 F. Supp. 1543, 1550 (D. Kan. 1992) (quoting *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir. 1985)).

Because of the existence of a genuine issue of fact, granting the motion to dismiss at this pre-discovery stage would be inappropriate.

**B. CUMIS' Claim and the Anti-Subrogation Rule.**

Plaintiff's claims against Defendant arise because of its relationship as subrogee of the Credit Union. "The insurer's right of subrogation against third persons causing the loss paid by the insurer to the insured is derived from the insured alone. Consequently, the insurer can take nothing by subrogation but the rights of the insured, and is subrogated to only such rights as the insured possesses. The rights of the insurer against the wrongdoer cannot rise higher than the rights of the insured against such wrongdoer, since the insurer as subrogee, in contemplation of law, stands in the place of the insured and succeeds to whatever rights he may have in the matter."[17]

Generally an insurer "cannot subrogate against its own insured to assert the indemnification claim of its named insured."[18] This principle is known as the anti-subrogation rule and generally prevents an insurer from seeking indemnification from its own insured.[19] "However, upon payment under a "fidelity bond," an insurer's right of subrogation extends to cover claims against third parties, including covered employees."[20] The extension of the right of subrogation to cover claims against

---

[17] *Farmers Ins. Co. v. Farm Bureau Mut. Ins. Co.*, 608 P.2d 923, 928 (Kan. 1980) (citing 44 Am. Jur. 2d, Insurance s 1821).

[18] *Obstetrics & Gynecology Ltd. Of Kansas City v. Buckner*, 795 P.2d 386, 392 (Kan. 1990) (quoting *Cont'l. Cas. Co. v. Empire Cas. Co.*, 713 P.2d 384, 394 (Colo. App. 1985)).

[19] 16 Russ, Lee R. With Segalla, Thomas F., Couch on Insurance § 224:1 (Thompson Reuters, 3rd ed. 2011) *available at* Westlaw COUCH.

[20] *Hartford Acc. & Indem. Co. v. Richards* 249 P.2d 236, 238 (Kan. 1956). *See also, Mfrs. Bank & Trust* v. *Transamerica Ins. Co.*, 568 F.Supp 790 (E.D. Mo. 1983).

employees is derived from the fact that the insurer makes payment under a bond claim to a party other than the employee (typically the employer), and its primary source of recovery is from the employee.[21]

Plaintiff's cause of action arises out its position as the insurer for the Credit Union's employee fidelity bond on the Defendant. Plaintiff has a right of subrogation for the amount paid to the Credit Union as a result of Credit Union's claim against the Defendant's fidelity bond. Credit Union's bond claim was the result of the Delimont's default on the Delimont Loan and other loans which were prepared and approved by the Defendant, but which were unauthorized because they violated Credit Union's lending policy. Because Plaintiff's claim against Defendant arises under an employee fidelity bond, the anti-subrogation rule does not apply to the claim. As a result, the Court concludes that Defendant's argument for a Rule 12(b)(6) motion to dismiss on the basis of the anti-subrogation rule falls short and the motion should be denied.

**C. Settlement Agreement in Cox Case Released Plaintiff's Claim**

Defendant argues that paragraph (6) of the Cox Agreement precludes Plaintiff's claims in the present case where it state in part "[Credit Union] will not pursue him (Defendant) personally regarding any claims arising out of any alleged acts by him," except as to "the difference between the settlement amount and the full amount due upon the Loan." (Clarification added).

The interpretation of a contract should be based on "a consideration of all the pertinent provisions" and not by a consideration of "a single or isolated provision."[22] In addition, preference is

---

[21] 16 Russ, Lee R. With Segalla, Thomas F., Couch on Insurance § 225:253 (Thompson Reuters, 3rd ed. 2011) *available at* Westlaw COUCH.

[22] *See Weiner v. Wilshire Oil Co.*, 389 P2.d 803, 808 (Kan. 1964).

given to specific or exact terms over general language when determining the intent of the parties to a contract.[23]

Applying these rules of interpretation to paragraph (6) of the Cox Agreement leads to the conclusion that the release granted by Credit Union of claims against Defendant is not as broad as Defendant argues. In citing the language which suggests a very broad interpretation of the release, Defendant ignores language immediately preceding which clearly limits the release to " any and all claims arising out of this Suit and Loan," referring to the Cox Case and the Cox Loan.  An examination of all the pertinent provisions of the release granted by Credit Union in paragraph (6) leads the Court to conclude that the release granted by Credit Union of claims against Defendant is limited to claims arising out of the Cox Case and the Cox Loan.

The Court concludes that the release granted by Credit Union of claims against Defendant does not bar nor preclude a claim against Defendant arising from the Delimont Loan. As discussed previously, Plaintiff's claim against Defendant is a result of its position as subrogee of the Credit Union.

---

[23] *See Harrison v. Farmers and Bankers Life Ins. Co.*, 181 P.2d 520, 523 (Kan. 1947); *See also,* Restatement (Second) of Contracts § 203(c) (1981) (Specific terms given greater weight than general language in the interpretation of an agreement).

**IT IS THEREFORE ORDERED** that Defendants' 12(b) motion to dismiss (Doc. 6) is hereby DENIED.

**IT IS SO ORDERED**.

Dated this 23rd day of January, 2012.

                                          ERIC F. MELGREN
                                        UNITED STATES DISTRICT JUDGE